Good morning. Thank you for standing up. I'd like to restart our five minutes for rebuttal, please. Yeah, well, watch your clock there when it says five. I'm going to help also try to help you out. On the first issue, with respect to jury instructions regarding the New England Legal Leave Act, the trial court failed to instruct the jury on the legal issues. That was not only raised by the evidence, but also critical to the jury's understanding of the plaintiff's theory of her case. The defendant admits that it did not adjust the plaintiff's performance expectations or workload in order to reflect the fact that she was regularly taking time off, unpaid, under the Family and Medical Leave Act. And the defendant now admits, during the appeal, that the plaintiff could, in fact, establish a violation of the Family and Medical Leave Act based on the fact that she did not have her performance expectations adjusted and inspired for poor performance. However, during the trial, the Director of Human Resources and also the plaintiff's manager testified unequivocally that, as a matter of law, the plaintiff was not entitled to any adjustment of her performance expectations because she was an exempt employee. And as an exempt employee, they didn't expect her to work an unlimited number of hours, even while taking intermediate and external pay. And the defendant believed that the plaintiff was not entitled to any adjustment, as a matter of law, as mentioned frequently during the trial and also during exhibits that were email exhibits introduced during trial. Because the trial court refused to instruct the jury on this issue at all, the jury instructions were incomplete and therefore incorrect. It did not offer any instructions. It did not deliver your instructions, but it did offer instructions on 11 of the 15 stopping instructions you asked for. The jury did not instruct at all with respect to the issue of exempt employees having their performance and expectations or workload adjusted during it. So while it did instruct generally on an FMLA interference claim that taking the plaintiff's leave as a factor in an adverse employment action would be a violation, there was no instruction that failing to adjust the performance expectations could lead to them using that as a factor in an adverse employment action. We have cases that we have said if you have the general instruction, of course, you don't need necessarily specifics. It just seemed to me that your argument fit right in to the instructions that were given. I do not believe that is correct. If you look at the case of Hunter versus the city of Sacramento, in that case, the court found that even though the instruction was general and technically correct, it did not cover adequately the theory of the plaintiff's case, and therefore, a remanded for a new trial. In that case, the situation was where the issue was whether a failure in our practice could be determined based on the failure to investigate many previous instances of civil rights violations, and the court did not instruct on that at all, and the court found that that was an error because it failed to adequately address the theory of the plaintiff's case. Basically, who is the negative consequence as a result of taking the FMLI plea business? I think the issue is that there were witnesses that testified explicitly that the plaintiff was not entitled to any performance adjustment, and so without any jury instruction to counteract that testimony, the jury was likely to believe that that was correct. If, as a matter of law, she was not entitled to any performance adjustment because she was an exempt employee, then obviously that could not be a basis to find interference. Doesn't the instruction that was given allow you to argue that anyway? Your Honor, it might allow us to argue that, but once again, there would be no legal guidance. As a legal issue, the legal guidance should come from the court, especially since there was witness testimony that it sort of gave the jury incorrect legal information. Did you object to that information coming in? I did not, because in this case, we listed that testimony because part of the basis of our claim is that they had been applying the leave incorrectly. Part of what we needed to prove to the jury was that, to all the panics had given the plaintiff incorrect information, and that she relied on that incorrect information. In addition, is the principal case establishing the legal composition that you wanted the instruction to reflect, the Seventh Circuit's case? Yes, Your Honor. Are there any other cases besides Lewis that do that? The Seventh Circuit reiterated that Fulding and Payne v. Payne. I believe in an 11th Circuit case, Evans v. Hooks and Layton, they also allowed the defendant to leave. I mean, because the Lewis case involved, you know, direct evidence of disclosure under interference with the FMLA and the plaintiff's rights. There's also direct evidence in this case, Your Honor. For instance, there was an e-mail that was sent where they specifically noted that her trying to dictate her schedule was a problem for her supervisors and her husband was fond to remove her from the program. So this was in response to her e-mail, one that they regarded as rude? Yes, Your Honor. Is this related to the weekend work? It's related to taking time off on Fridays as well. Well, she did say she took time off on Fridays, but did the specific issue arise because something came up during the weekend? It is when the specific issue arose, but prior to that e-mail they actually did not know that she regularly took off Fridays, Your Honor. Did she have the right to decline work on Fridays on weekends? Yes, she did. Pursuant to the terms of the FMLA leave that she was granted, it was very specifically eight hours per day or one day through Thursday. That was what was approved very specifically by her supervisor, Terry O'Day. So even though she was an unclassified employee and there might be an emergency, she was exempt from working on any kind of emergency work on weekends? Getting called in on a Tuesday night, for example? Your Honor, yes, under the FMLA, I mean obviously people can work around the principle accommodations and IPHQs, but is that a matter of law? It's not in the regs. It's in the cases. Where's the support for that? Do you think there's a chance that it would be a violation of the law to force her to work on the weekend? People in great professional positions, if she wanted to, she was a very, very well-educated engineer. Oftentimes have to work on an emergency basis. They may have to go in and work late on one night. They may get called in on a weekend if they've got something that needs to be addressed. That's a little bit different from being a salaried employee. I mean, I'm sorry, an hourly employee someplace where you can say, oh, this is all going to work. Well, under the FMLA leave that she was granted, she was given the right to work only Monday through Thursday, eight hours per day. So if they tried to require her to work on the weekends and night, it would be a violation of her FMLA leave. But wasn't the 8-to-5 issue, isn't that basically a calculation recognizing she's going to take Fridays off? And when they calculate what her pay is going to be, they calculate her normal eight hours a day, correct? So it wasn't like a you-must-work-between-nine-and-five sort of thing? I'm sorry, could you repeat the question? I mean, the difficulty with the way you stated it, it sounds like instead of saying you're not going to work on Fridays, it was more affirmative. You will work Monday through Thursday for these eight hours per day. And every employee does that every day, works eight hours. It's a question of how many days of work they do, isn't it? Well, that was what the plaintiff had requested and what was approved for her. So that was what the plaintiff requested, and she thoughtfully chose to. Well, my question isn't precise. She wanted Fridays off. Right. So all that is predicated on Fridays off. It's not predicated on the only other work she can do is Monday through Thursday, correct? Because every employee works Monday through Friday, eight hours. But if something comes up on the weekend, as Judge Barbee points out, in this classification of employees, then they jump in. Well, I think the issue of the weekend work isn't necessarily relevant because there was never actually an incident where she was required to work on the weekend. The main issue is that they weren't adjusting her performance expectations to reflect the fact that she was regularly taking time off. So there's a difference between becoming four-fifths of a regular employee and somebody saying I'm only working 32 hours a week. Those are two very different things. Again, as Judge McKeown points out, the ordinary assumption is that an engineer's work weekend, the employee there would work about 40 hours a week. They might be required to work more. They might have less than four periods where she was underemployed. She had a number of other engineers who were underemployed during the extended project's four-week workbook. Nobody was looking, was counting whether they were actually there 40 hours a week, but she was getting paid for 40 hours whether she was there or not. So being four-fifths of an employee is a little bit different, but employees in that situation may be expected to work some nights and perhaps some weekends. Well, I think the issue is that there was no adjustment made whatsoever. So it doesn't matter if it was a regular schedule or intermittent leave. The fact is that her performance expectations needed to be fairly adjusted to reflect the time that she was taking off unpaid. In this case, there was no adjustment whatsoever. So, I don't know, is that a distinction? You've got this jury. You were allowed to argue this jury before the jury. I could have argued it before the jury because there was no legal construction. I cannot very highly argue here. Can I move you to a counterpoint issue?  Okay. I know you're trying to reserve five minutes, but what is your best case for your position on the counterpoint? So the counterpoint is that I'm full of damages for breach of contract, do not include attorney's fees. You're asking for a specific set of decisions. Are you relying most heavily on the FASO case? Is that the case you're relying on? I think the defendant is relying on the FASO case. So what are you relying on? We rely on the Ponderosa case from Arizona. Okay. But, you know, let me follow that a little bit. It's not a case that involves a claim for statutory attorney's fees. This case involves, although you use the statute for purposes, the statute was used by the Denver court for purposes of calculating the amount of attorney's fees. The appeal to attorney's fees was not based on statute. It was based on the contractual agreement, the confidentiality agreement, right? I believe that the ruling in this case was that the attorney's fees were based both on statute and the agreement. Both the statute and the agreement require the party to be the prevailing party in the claim in order to be awarded attorney's fees. Okay. So I'm confused. All of you say your best case is Ponderosa. Ponderosa is, you know, in that case there was this warranty. And the argument was that the warranty language clearly disallowed consequential damages. So, in fact, attorney's fees were consequential damages, and attorney's fees were not allowed, right? And that means? Correct. But in your case here, I'm arguing the opposite. You're saying attorney's fees are not consequential damages, therefore attorney's fees are not affordable, whereas if they were consequential in the Ponderosa case, that made them not affordable. I think the law is clear in Arizona that attorney's fees can only be awarded as damages by contract or by statute. It can't be awarded as damages for a breach of contract. Okay. I just stopped there. Forget the statute. I'm looking at the confidentiality agreement. It says, for example, if the party is forced to and successfully does enforce this agreement, in any court, the party being enforced against will reimburse and indemnify for actual costs, including the not limited to attorney's fees. Why doesn't that apply here? Because, like the statute, the contract language requires that they only get their attorney's fees if they are the prevailing party. And I think the Supreme Court made it clear in Hewitt v. Conflict, in order to be the prevailing party, you have to actually be awarded relief on the merits of your case. Well, didn't they get relief that she breached the contract with respect to the confidentiality? Finding that she breached the contract, it's not in the wording of revisions to monetary damages or actual damages. But you don't have to get monetary damages. She's supposed to get the documents at that point. They were requested to return them. But it's not relief. In other words, you can win your contract, she breached the contract, and they didn't claim any underlying damages. They did, your honor. And they didn't get any? Correct. Right. I mean, so the court basically says, you want to breach a contract claim, and they did ask for the documents back earlier, and she said no, and she was put in a positive with the court. But she still has the documents, right? Correct. The documents have been available as a public record now for some time. The original basis of the counterclaim was that, for the next leave, the plaintiff was supposed to be taking this confidential information and giving it to the police for a profit. So that was the basis that their damages were breached in the contract, and they failed to prove that any of that actually happened. And they never requested equitable relief. They never requested the court to order return of the documents, and the court did not order that the plaintiff return the documents. If you look at, I think it's page two of the record, the court specifically found that they abandoned their efforts to get the documents returned. Thank you. Thank you. Thank you. Thank you, Your Honor. It's good morning. I'm here with the Judge of the Court. We'd like to start, of course, with the issue of the FMOI. The client has argued, the moment here, Ms. Chase, that the Court erred in not granting end-to-end instructions in the jury, jury instructions 11 to 15. But for three reasons, those arguments fail. First, the Court should not allow those instructions in any event because there was no factual basis pledged sufficient under 1280. The Court disagreed on that. But nonetheless concluded that the instructions should not have been given because they were not required as a matter of law. The judgment being definitively the case that the client has compellingly relies upon here, this is an uncertain case, is the only case that comes close to trying to make the argument that the plaintiff claims is a matter of law. And it does not say what kind of evidence it says. The Seventh Circuit addressed a very different situation in that case. And it did not hold that as a matter of law, anything in the FMLA or the Department of Labor's regulations interpreting the employee, or any case required as a matter of law, whether the employee was powerly or exempt, that the employer's expectations of that employee be adjusted to account for that employee's seeking of that employee. That's nowhere in the law. It's nowhere in any case. And it would be an error for the court to have instructed the jury that that was in fact required. But other than the error, doesn't your client have to adjust its expectations in some way? She can take every Friday off to care for a needy child. And she's gone through HR. It's all above board. Everybody knows exactly what she's doing. And if her report comes back, her annual report comes back and says, did you get as much accomplished as everybody else in the office did? That's not fair, is it? Your Honor, is that a correct statement of the law, that the children in nine months could do that? It is, Your Honor. The FMLA is a very extensive, it contains very extensive set of regulations that the Department of Labor has adopted. And it has set up two different approaches for employees who are taking leave in something other than a continuous block of time. And with respect to one of the cases that the plaintiff cited, the Seventh Circuit's decision in Harvard, where the expectation was adjusted as because the expectation specifically related to a sales point. And in that situation, because the employee was missing a certain amount of work, this was put ahead and adjusted. The law does not provide for an employee who is taking intermittent leave. That is specifically defined in AB 25-202A as being resulting from one event that causes a series of intermittent but sporadic leave. So, remind me, was her pay reduced? Your Honor, the only testimony in trial on that was that her pay was never reduced in a week where she worked 40 or more hours. This gives an employee that didn't really answer my question, was her pay ever reduced? It was reduced in weeks where she did not work 40 hours. Your Honor, if her pay is reduced, then how can they expect her to accomplish everything that everybody else can? Your Honor, the regulations allow for a different approach if she wants to have a reduced schedule. When an employee wants to limit the total number of hours, and this is what Congress concluded, was if an employee has the need to take care of business or attend the doctor's appointment on a certain day, that they need to have that opportunity. It's the purpose for which the leave is granted. And that's intermittent. If an employee has a situation where they simply can't work more than a certain number of hours a week, then you can apply for and receive a reduced schedule leave, which 825-202-B specifically says is typically a part-time schedule, and that reduces the pay. Doesn't that suggest that you still have a reduced schedule leave? No, Your Honor, the Department of Labor's regulations specifically allow, for example, exempt employees who do not complete a full work load because of an FMI leave to have their pay deducted in the amount of the FMI leave without affecting their exempt status. Ultimately, Your Honor, this was the exempt employee who was expected, like all exempt employees, to work as many hours as the job requires. Let me realize it's not your case. We'll start from that premise. Okay? Hypothetical. Somebody comes in and says, I've got to take care of my mother for the next two weeks. She's having a very serious open-heart surgery. I need two weeks to do it. I'll be back. But I won't be able to work during that time because I'm required full-time care. And during that time, there's some kind of emergency that comes up at work. And she's not available because at home. She's just stuck to be there. At the end of the year, when we get to the end of the year, we're going to be wasting time. We can't depend on you to be here when we really need you. You aren't here when all the chips are on the table. You aren't here during the emergency. Would that be a violation of the FMI law? Yes, Your Honor. I think it would. Thank you for raising that point. And don't they have to adjust their expectations in some way? Your Honor, in an appropriate case, perhaps. The problem with the plaintiff's obstruction is that it would have directed the juror to find that the law required general dynamics of court systems to change his expectations based on the facts of the case. And the only evidence that the plaintiff ever worked as an exempt employee was 47 hours. In one week, two other weeks that she worked, one week she worked 42 hours, one week she worked 43 hours. Your Honor, her own evidence that she submitted in her brief, in her opening brief, says that the engineers on that program were working 16 to 17 hours a week. With an exempt employee, then he has to work however much the law requires to get the job done. Working on occasion, once 47 hours, or in a couple of occasions, 42 or 43 hours. When everyone else is working 60 to 70 hours, it is, obviously, it is an adjustment. But on the facts of the case presented in the trial court, the jury should not be instructed as a matter of law that on the facts of the case, the expectations have to be adjusted. Now, the reality is, the biggest thing that does come against what G.D.C. Forrest expected of Mrs. Jenkins was that her work, that was assigned to her, should not have taken more than 30 hours a week. That was their expectation. She didn't take this on occasion. She had to work more. The company's expectation was that the work they assigned would be a 30-hour point. Can I move to the color plate? Certainly. So, can you tell me what your best case is for your position on what the color plate result should be? It's awesome, Your Honor. But in that case, we have actually no express discussion about whether attorney's fees clause can be actual damages. I mean, we certainly, the 9th Circuit decision, with Fario, the district court in that case, didn't touch it. One reason it didn't touch it was that was not an issue before the 9th Circuit. So you're sort of extrapolating. Is that right? When you say, look, the 9th Circuit affirmed the decision here that's in a situation like ours. Therefore, you should assume the 9th Circuit has adopted a particular approving stance with respect to an issue that actually was not litigated before the 9th Circuit. Am I correctly summarizing what you're thinking? Your Honor, in the 9th Circuit, you're correct. That was not an issue whether attorney's fees can be a consequence of damages was before the court. In the 9th Circuit, they affirmed the district judge's decision, and the district judge did deal with that issue. And it was one of the issues that was litigated in the district court's decision was that attorney's fees were being sought as part of the amount of damages. They were not awarded as part of the amount of damages. They were awarded under 12341, just as an excuse. And it's, Your Honor, very unusual for a litigant in 22 D.C. for us to have the opportunity to present not just the same contract that this court and the district court looked at, but the very same issue that the district court dealt with, which was the taking of confidential documents. And the trial court in this case very clearly held that taking those documents was a damage to 22 D.C. for us. And so what you noted, Your Honor, points out, is that that caused irreparable harm, first of all, it's presumed. Damage as an element, and I think the plaintiff's argument goes as far as their opponents are connized, which is valid, because the parties agreed that confidential information, Your Honor, is removed and not returned, and we've caused irreparable harm. She's asked the plaintiff that. Yes, Your Honor, you did. We had a vacuuming disclosure that the plaintiff made as a result of trying to validate documents. No, Your Honor, once we actually got to the point, and this is what the trial court had focused on, once we got to the point of having to litigate, first of all, the plaintiff's attempt to have the contract declared unenforceable in court as a conspiracy policy, they may have had to litigate her attempt to file the documents in public record. Once we had documented the documents and were able to determine that the documents were such that it wasn't worth the cost of personally equitable relief... So what does it mean here when it says summary judgment order? Basically, the documents that... GD actually published these documents, so they're out in the public domain. Is that true? Your Honor, I don't believe that's true. I think that's what was put on the summary record. Certainly. Some of the documents were published as part of... Some of the documents were utilized as part of the public record. Then, after the parties had tried, or after Judy Seporez had tried, to get extraordinary efforts to try to avoid the cost of litigation... Well, let me... She never put any of the documents in the public record, correct? Correct, Your Honor. Okay. So she has this cache of documents. She says she needs them for her trial. He spent $25,000. This is kind of what, to me, is odd about this case. She has these documents. She's not trying to sell them. They're not going anywhere. They're sitting in her kitchen or wherever. And he spent $25,000 to, quote, enforce the agreement. And that's what the attorney's fees say. But in the end, some significant number of them are actually public-doing documents to begin with. And you don't even get the physical documents back from her or ask the court to enforce an order that she's made no further copies or anything else. Is that true up to now? Your Honor, with the modification that the court prohibited her from putting them into the public record, as the court made clear... Well, she asked. She didn't just plop them in there. She asked, right? Your Honor, she threatened them. We went to the court and asked them and tried. Right, so she didn't go put them. She didn't file them without some notice. So my question really is this.  you asked for damages, correct? Yes, Your Honor. And other than attorney's fees, are there any, and I'm not saying whether those are classified as damages, it wasn't determined that there were no damages? Other than attorney's fees, we did not. General Dynamics Court Systems did not argue that there were other actual damages or consequential damages, those prohibited damages. As identified in the contract, as Your Honor noted, that's specific to the parties envisioned in this contract, as opposed to some of the other cases that the public has cited, that those would be a cause... You didn't have, your complaint didn't ask for injunction, is that correct? That's correct, Your Honor. It didn't ask for declaratory relief? That's correct, Your Honor. So all you asked for was breach of contract finding? That's correct, Your Honor. So we have this agreement. She's got the documents and it takes $25,000 to get to that result? Much doubt, Your Honor. As the trial judge noted, it was incurred because Ms. Chase refused to let General Dynamics Court Systems review the documents before she tried to file them. It was substantial effort, as the court noted in its order, by GDC for us to avoid having to file an action. But I've had a look at all this legal research that's done, and there's some rejection. You know, it doesn't take much legal research to say, here's the contract. Here's what it says or doesn't say. So our judgment's on it. To me, the difficulty here is, yes, you have this underlying lawsuit. She thinks she needs the documents for that. But this side, breach of contract, it just seems to me that there's a real question about the proportionality here. And I would like you to address that. And Your Honor, I think if you look at the elements for the breach of contract action, the amount of damages can only be established to establish that there have been damages. All that's required is that there have been damages under this contract. And it's very clear there were damages. There is no dispute that GDC for us incurred attorney's fees, which the contract does. Contract damages, that's not like arguing in a circle or something. My question is the proportionality of these so-called damages to what we have here, which is basically a very straightforward confidentiality agreement. Your Honor, the damages, in essence, GDC for us waived its entitlement to damages as a consequential, that is, element of damages to the attorney's fees. That was waived because that would have been required to have been established beyond a reasonable doubt. And instead, relied upon, I'm sorry, beyond the subject judgment stage beyond a disputed fact. And yet, we have statute that provides an appropriate mechanism for damages to be awarded, for damages, I'm sorry, for attorney's fees to be awarded for breach of contract. The fact of damages, the fact that the breach has been established, the question then is, are the damages going to be proved as consequential damages, or is the party entitled to damages as a prevailing party, I'm sorry, to attorney's fees as a prevailing party under Arizona law? My question to you, Your Honor, if you had contracts that you would be reimbursed for whatever your outlay was, if the confidentiality agreement had been breached, if you had a contractual provision that expressed the apology to be proved when you lost, right? Yes, Your Honor. Okay, so that's what you were relying on. I understand that you have a contract with the attorney's fees statute, and Arizona law, you had a separate contractual express reimbursement, and yet, yes, Your Honor. Okay, so even without the statute or compliance in terms of your title and fees, you were both in a breach of position. That's correct, Your Honor. And once you check off that box on that, on that the GBC forces established the breach of contract, then it has the option under Arizona law, does it, is it going to remove from these damages and seek a jury trial on that, or is it simply going to make the decision under 341.01? It's the most reasonable and efficient way of doing it, and all of the causes of trial for it would need to be noted, including early on in the case, the inability to finance checks, and simply prompt a conscience, and let a jury support us review them and work out an agreement before proceeding on the case. Thank you. Thank you. No, we thought you'd go away over time, so. I think, yeah, but we've been briefing you. I'm not so sure what you're talking about. You've got your clients on the line, so we don't want their system here. I'm just trying to get your 3.38 minutes over time, but that's okay. I'm sorry. No, it's no problem. We'll give you a minute for rebuttal. Thank you. Just to adjust to the point that I had, which is up to the contract that's provided for the return of attorney's fees, the contract requires that no damage be successful in enforcing their action in court before they are entitled to fees. Well, if your provincial contract requires proof of damages in order to establish breach of contracts without damages, you're not successful. Except that the contract stipulates that if you take the damages, I'm sorry, if you take the documents that the damages are presumed, that there's equitable relief. The contract stipulates that irreparable harm for purposes of equitable relief would be presumed. Irreparable harm is to prevent monetary damages, so that would apply if they had signed a chapter of the relief, but they did not. And then, just very quickly, with respect to the FRA issue, it was General Dynamics that said, inappropriately, that there's this clear and free affidavit for exempt employees, and that's incorrect. There is no exception in the affidavit for treating exempt employees differently. They do spread in front of the jury that that exception exists, however, in that particular case, this indicated a period of liability. Thank you, sir. Thank you both, counsel, for your argument this morning. The case of Chiefs v. General Dynamics is submitted. Our next case for argument will be Jachelski v. Egon.
judges: McKeown, Bybee, Mollway